UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

BRENT SCHAPKA, )
)
    Plaintiff, )
)
v. ) Case No. 17-1059-STE
)
NANCY A. BERRYHILL, )
Acting Commissioner of the )
Social Security Administration, )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

### I.    PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's application for disability insurance benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 11-25). The

Appeals Council denied Plaintiff's request for review. (TR. 1-5). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from April 7, 2014, the alleged amended disability onset date, through September 30, 2014, the date Plaintiff last met the insured status requirements of the Social Security Act (date last insured or DLI). (TR. 13). At step two, the ALJ determined that, through the DLI, Plaintiff had the following severe impairments: affective mood disorder, bipolar, and depression. (TR. 13). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 18).

At step four, the ALJ found that Plaintiff was not capable of performing his past relevant work. (TR. 23). The ALJ further concluded that Plaintiff retained the residual functional capacity (RFC) to perform "a full range of work at all exertional levels but with the following nonexertional limitations:"

> never climb ladders or scaffolds; occasionally balance; never exposed to hazards such as hazardous machinery, unprotected heights or raw chemical solutions; . . . work must be limited to simple, routine, and repetitive tasks; occasional interaction with co-workers, supervisors, and the public; free of production and rate pace.

(TR. 19).

With this RFC, the ALJ made additional findings at step five. The ALJ consulted with a vocational expert (VE) to determine whether there were other jobs in the national

2

economy that Plaintiff could perform. Given the limitations presented by the ALJ, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 58-59). Relying upon the testimony of the VE, the ALJ concluded that Plaintiff was not disabled based on his ability to perform the identified jobs. (TR. 23-24).

### III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in (1) failing to consider properly consider the treating physician's opinion; (2) failing to properly consider Plaintiff's allegations; and (3) assessing an RFC not supported by substantial evidence. (ECF No. 14:1, 4-9).

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

### V. ANALYSIS

#### A. Treating Physician's Opinion

Plaintiff first argues that the ALJ failed to properly consider the treating physician's opinion. (ECF No. 14:4-5). Plaintiff received mental health care through Red Rock

3

Behavioral Health Services and was treated by Everett Bayne, M.D. (TR. 551-82, 588-600, 616-33, 642). On April 16, 2015, Dr. Bayne signed a letter stating:

> [Plaintiff] is currently under my care. He has been diagnosed with Major Depressive Disorder (recurrent, severe). His condition currently results in multiple long stretches of depression every month in which he can barely leave his room for days. Current medications include [list of medications]. [Plaintiff's] most recent services started in April 2014; he has been coming in once or twice monthly.

(TR. 642). Plaintiff acknowledges that Dr. Bayne's letter "was dated after the relevant time period," but contends that "it is clear that it relates to that period." (ECF No. 14:5). Plaintiff asserts that it was error for the ALJ to fail to discuss or give weight to Dr. Bayne's opinion. (*Id.*).

In her review of the medical evidence, the ALJ distinguished between "Medical Evidence Prior to Amended Alleged Onset Date" and "Medical Evidence Since Amended Alleged Onset Date (April 7, 2014[)], and Prior to Date Last Insured of September 30, 2014." (TR. 13, 15). The ALJ discussed only minimal medical evidence dated after Plaintiff's DLI, and did not discuss the April 2015 letter signed by Dr. Bayne. A claim of disability may be supported by direct evidence or indirect evidence. Without doubt, medical records during an insured period are direct evidence of a claimant's condition during that period. *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993). Medical records that post-date the insured period, however, may constitute indirect evidence of a claimant's condition during the insured period and, if so, should also be considered. *See id.* (evidence beyond the date last insured may be considered to the extent it sheds light on the nature and severity of claimant's condition during the insured period). Here, however, Dr. Bayne's letter provides no information about the

4

period between Plaintiff's amended alleged onset date and DLI; instead it specifically relates to the then-current period, which was more than six months after Plaintiff's DLI. *See* TR. 642 ("[Plaintiff's] condition *currently* results in . . . . *Current* medications include . . . ." (emphasis added)). As the letter itself does not support Plaintiff's contention that it related to the relevant time period, and Plaintiff has provided no other support for his contention that it does, the Court finds Plaintiff's first argument unavailing. *See Grede v. Astrue*, 443 F. App'x 323, 326 (10th Cir. 2011) (finding no error when ALJ did not consider mental health records that post-dated DLI when those records did not indicate that any problems were present during the time plaintiff was insured). Plaintiff has shown no reversible error in the ALJ's failure to consider Dr. Bayne's April 2015 letter.

### B. Plaintiff's Allegations

Plaintiff claims that his depressive symptoms were such that he "had episodes of depression every month during which he spent most of his time in bed." (ECF 14:6). The SSA has provided guidance on how it considers claimants' statements regarding their symptoms:

> Once the existence of a medically determinable impairment that could reasonably be expected to produce pain or other symptoms is established, we recognize that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence. In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2017 WL 5180304, at *4 (eff. Oct. 25, 2017, to be applied to decisions made on or after Mar. 28, 2016). As required, here the ALJ examined the objective medical evidence but found that it "did not substantiate" Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms. (TR. 22).

Plaintiff alleges that the ALJ erred by not citing the medical evidence she found inconsistent. (ECF 14:6). Plaintiff, however, fails to consider that the ALJ thoroughly discussed Plaintiff's medical record. *See* TR. 15-16 (discussing mental health records dated April 7, 2014; April 24, 2014; May 22, 2014; June 19, 2014; July 17, 2014; Aug. 14, 2014; Sept. 11, 2014), 17 (discussing reports from State agency psychologists); *see also* TR. 13-15 (discussing mental health records dated before Plaintiff's amended alleged onset date), 22-23 (referencing medical record). And though Plaintiff claims that the medical records "are consistent with the waxing and waning of [his] depression," in fact the medical record indicates that during the relevant time period after Plaintiff began receiving treatment, Plaintiff's mood was generally reported as stable. *See* TR. 551 (April 24, 2014, initial appointment with Dr. Bayne, reporting mood as unstable), 559 (May 22, 2014, reporting mood as stable), 565 (June 19, 2014, reporting mood as stable overall), 571 (July 17, 2014, reporting mood as stable overall), 594 (Sept. 11, 2014, reporting mood as stable overall), 616 (Oct. 9, 2014, reporting mood as stable overall);[1] *but see* TR. 588 (Aug. 14, 2014, reporting mood as unstable). Moreover, the medical record indicates that during the relevant time period, the severity of Plaintiff's depression was

---

[1] Though the appointment on October 9, 2014 post-dates Plaintiff's DLI of September 30, 2014, because the appointment covered Plaintiff's history for the prior month, the Court has considered it. *See* TR. 616.

mild. *See* TR. 559, 565, 571, 588, 594, 616. The ALJ's discussion of the medical record provides substantial evidence for the ALJ's determination that the record did not substantiate Plaintiff's claims of limitations caused by his depressive symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *5 ("[The SSA] must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record."); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) ("[T]he ALJ did not simply recite the general factors he considered, he also stated what specific evidence he relied on in determining that [the claimant's] allegations of disabling pain were not credible."). Tenth Circuit precedent requires that the ALJ's credibility determination must be "closely and affirmatively linked" to substantial record evidence, which the ALJ's was. Plaintiff has not shown that the ALJ's discussion of the medical record was inadequate. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009).

Plaintiff also alleges that the ALJ erred because, in listing Plaintiff's activities, the ALJ did not consider that Plaintiff could perform those activities when he was not depressed but could not perform them when he was depressed. (ECF 14:6-7). Plaintiff, however, fails to recognize that the ALJ specifically considered Plaintiff's testimony that his depression impacted his ability to function:

- "[Plaintiff] sometimes did not get out of [bed] . . ." (TR. 18)
- "[W]hen depressed, [he] is too exhausted to bathe or shave." (TR. 18)
- "He stated he sleeps a lot when he is manic." (TR. 20)
- "[W]hen depressed he is too exhausted to bathe." (TR. 20)

7

- "He stated [his depression] comes and goes 2 days to 10 day[s] and he spends it in bed." (TR. 21)

- "He stated he gets in depression and sleeps." (TR. 21)

- "He stated he tries to take care of dogs, does laundry and keeps room clean when he is feeling good." (TR. 22)

- "He stated on good days he tries to vacuum, does laundry and cooks for himself." (TR. 22)

Contrary to Plaintiff's argument, the ALJ did not fail to "consider the difference between [Plaintiff's] activities when depressed and when not." *See* ECF 14:7. And the Court's "limited scope of review precludes [it] from reweighing the evidence or substituting [its] judgment for that of the" agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007); *see also Bainbridge v. Colvin*, 618 F. App'x 384, 388 (10th Cir. 2015) (finding no error when ALJ's adverse credibility finding was based in part on plaintiff's activities, but plaintiff claimed he could only perform those activities on good days).

Plaintiff further alleges that the ALJ failed to consider other factors supporting his allegations, including that he had consistently received treatment for his mental impairments and that his prescription medication had been increased in an effort to control his symptoms. (ECF 14:7). However, as set forth above, the ALJ did consider the treatment Plaintiff received for his mental impairments. *See* TR. 13-16 (reviewing mental health treatment). Moreover, the ALJ also considered the medication Plaintiff was prescribed for his symptoms, including medication compliance, that Plaintiff reported no

or minimal side effects, and the fact that Plaintiff's mood was generally reported as stable. *See* TR. 15-16. Plaintiff began treatment at Red Rock Behavioral Services on April 24, 2014, and Plaintiff points to increases in his medications over the next two appointments as evidence that "may show that [symptoms] are intense and persistent." (ECF 14:7, citing medical records from April 24, 2014, May 22, 2014, and June 19, 2014). However, a single increase in one medication – particularly at the beginning of treatment when medication adjustments may be expected – does not indicate that Plaintiff's symptoms were debilitating.[2] The Court finds no error in the ALJ's consideration of Plaintiff's allegations of his depressive symptoms.

### C. RFC Supported by Substantial Evidence

Plaintiff's final allegation of error is that the RFC assessment is not supported by substantial evidence. (ECF 14:7-9). Plaintiff relies on the assessments by the state agency psychologists to assert that his "moderate limitation in the ability to maintain regular attendance and complete a normal workweek" should have been reflected in the RFC. (*Id.*, citing TR. 71, 86-87). Plaintiff is correct that both state agency psychologists who reviewed Plaintiff's application found that Plaintiff was moderately limited in his ability to perform activities within a schedule and maintain regular attendance. (TR. 71, 87). With respect to limitations in his ability to complete a normal work day and work week without interruptions, the agency psychologist who initially reviewed Plaintiff's application found

---

[2] Plaintiff asserts that the dosages of both Seroquel and Cymbalta were increased. However, the prescription for Seroquel changed from one 150 mg extended release tablet to one-half 300 mg immediate release tablet; the dosage did not increase. *Compare* TR. 554, *with* TR. 562, 568. Plaintiff's Cymbalta was initially prescribed at 30 mg and increased to 60 mg on June 19, 2014. *See* TR. 554, 562, 568.

9

moderate limitations, but the agency psychologist who reviewed the application on reconsideration found that Plaintiff was not significantly limited in that area. (TR. 71, 87).

These limitations were noted in the first section of the Mental RFC Assessment form (MRFCA). *See* TR. 71, 87. As explained by the Tenth Circuit, the Section I of the MRFCA is for "recording summary conclusions derived from the evidence in the file" and directs that "detailed explanation of the degree of limitation for each category is to be recorded in Section III."[3] *Carver v. Colvin*, 600 F. App'x 616, 618 (10th Cir. 2015) (quoting alternate version of the MRFCA form) (internal quotation marks and alterations omitted). Additionally, "'[i]t is the narrative written by the . . . psychologist in Section III that adjudicators are to use as the assessment of RFC.'" *Carver*, 600 F. App'x at 619 (quoting the SSA's Program Operations Manual Systems DI 25020.010B.1). In the section for Additional Explanations (the equivalent of Section III), the initial agency psychologist clarified that Plaintiff's limitations, though moderate, did not prevent him from fulfilling the demands of an 8-hour workday or a 40-hour workweek. (TR. 72). Similarly, the reconsideration agency psychologist clarified that Plaintiff's limitations, though moderate, did not prevent him from being able to adapt to a work situation. (TR. 87). These explanations meet the requirement that "the degree and extent of the capacity or limitation must be described in narrative format." *See Carver*, 600 F. App'x at 619 (interior quotation marks and alterations omitted).

---

[3] As Plaintiff recognizes, the form of the MRFCA referenced by the Tenth Circuit in *Carver* included sections captioned Section I (the first section) and Section III (the last section). *See* ECF 14:9. The form of the MRFCA in Plaintiff's record is slightly different and the first and last sections are not captioned as Sections I and III; however, the substance of the form is the same and the principles explained by the Tenth Circuit still apply. *Accord id.*

10

The Court finds no error in the ALJ's consideration of the MRFCAs or in her reliance on the opinions of the state agency psychologists.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on this review, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on July 5, 2018.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE